UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

TREASURE ISLES HC, INC.                                  CASE NO. 10-50304

TREASURE ISLES, INC.                                     CASE NO. 10-50305

PASTA ISLES, INC.                                        CASE NO. 10-50306

       DEBTORS                                CHAPTER 11
                                                         (JOINT APPLICATION
                                                         PENDING)

---

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN INTERIM NUNC PRO TUNC ORDER APPROVING POST-PETITION EMERGENCY SECURED LOAN AND FOR SUBSEQUENT FINAL ORDER**

---

Come Treasure Isles HC, Inc., Treasure Isles, Inc. and Pasta Isles, Inc. (the "Debtors"), by counsel, and hereby moves the Court for the entry of an interim order sustaining this Emergency Motion (the "Motion") and granting interim approval, pursuant to Sections 362, 364 and 507(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001(b), (c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (1) authorizing the Debtors, inter alia, to obtain and repay short – term emergency  postpetition loan (the "Emergency Post-Petition Loan") pursuant to the terms and provisions set forth herein (2) granting an extended lien on existing collateral as set forth herein, and  (3) prescribing the form and manner of notice and time for interim and final hearings under Bankruptcy Rule 4001(c), and in support thereof, respectfully state as follows:

## JURISDICTION AND VENUE

1.      On February 1, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for

relief with this Court under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101,

*et seq.* (the "Bankruptcy Code").  The Debtors are operating their businesses as debtors and debtors

in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.      This Court has jurisdiction over these Chapter 11 cases under 28 U.S.C. §§ 157 and

1334.  These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A).

3.      The Debtors maintain their principal places of business in Fayette County, Kentucky.

Accordingly, venue for the Debtors' Chapter 11 cases is proper in this District under 28 U.S.C.

§§ 1408 and 1409.

4.      No trustee or examiner has been appointed in these Chapter 11 cases, and no

creditors' committee or other official committee has been appointed.

## RULE 4001 STATEMENT

5.      The Debtors seek an emergency hearing for interim approval of the Emergency Post

Petition Loan, made in order to cover payroll issued on Saturday, January 30, 2010, pursuant to the

terms and conditions set forth herein:

      a.      The name of the DIP Lender is Frank D. Cain, an insider of the Debtors.

      b.      The Debtors have obtained on February 1, 2010 a short term loan in the form of a draw note in  the amount of $250,000.00 (the "Note"), solely to cover payroll checks issued on January  30, 2010;

      c.      The DIP Lender will be entitled to repayment of all sums loaned , with interest only as is charged by the Bank who loaned the funds to Mr. Cain, as soon as funds are available;

      d.      The maturity date for repayment of the short- term emergency loan will be no later than June 30, 2010;

        e.      The DIP Lender will be granted a lien on all of his existing collateral to secure this additional advance until repaid in full.

## BACKGROUND

6.      The Debtors operate as three entities:  HC, Treasure Isles and Pasta Isles.

**Treasure Isles**

7.      Debtor Treasure Isles is party to a franchise agreement with Long John Silver's, Inc. ("LJS Inc."), pursuant to which it operates 26 Long John Silver's restaurants in Illinois.  The Long John Silver's restaurants are a commonly known fast-food restaurant chain offering food products such as fish, seafood, chicken and related items.  Treasure Isles currently employs approximately 355 employees (317 hourly and 38 salaried) in its operations.

8.      Treasure Isles, through its predecessor Terry Properties, Inc., opened its first Long John Silver's restaurant in 1972 and has a long history of excellent operations, winning the highest awards within the franchise grading systems for its cleanliness, hospitality, and other overall operational considerations.  Treasure Isles has been one of the largest Long John Silver's franchisees in the United States.

9.      Since 1999, Treasure Isles has also opened and operated a total of seven A&W/Long John Silver's "co-branded" restaurants (the "Co-Branded L/A Restaurants") in Illinois. Treasure Isles has a separate franchise agreement with YUM! Brands, Inc. ("YUM!") for the co-branded stores.

**Pasta Isles**

10.      Debtor Pasta Isles is party to a franchise agreement with Fazoli's, Inc. ("Fazoli's"), pursuant to which it operates four Fazoli's restaurants in Virginia. Fazoli's restaurants are well- known franchised concept restaurants offering Italian related food products such as pizza,

Case 10-50304-jms   Doc 12   Filed 02/01/10   Entered 02/01/10 17:06:07   Desc Main
Document      Page 4 of 7

pastas and salads.  Pasta Isles employs approximately 85 employees (77 hourly and 8 salaried) in its

operations.

**HC**

11.     HC is the parent and holding company of Treasure Isles and Pasta Isles and maintains

management responsibilities for both entities.  HC receives an income from Treasure Isles and Pasta

Isles in consideration for its management duties.  Treasure Isles provides 80 percent of HC's income

and Pasta Isles provides 20 percent of HC's income.  HC employs 7 salaried employees in its central

offices located at 407 N. Broadway in Lexington, Kentucky and 4 employees who work from their

homes in Illinois.

12.     While both Treasure Isles and Pasta Isles have experienced some strain on operations

as a result of the general economy, the primary reason for the Chapter 11 filing is the January 6,

2010 written default notice from YUM!, with the accompanying threat of termination of the

franchise agreements, unless an alleged payment default was immediately cured.  Lacking the

financial wherewithal to make an immediate and full cure and being unable to agree to YUM!'s

demands                                                                                    for

a full release of potential claims against it, the Debtors felt they had no other choice than to file, as

losing the franchise is not a viable option and would  be devastating to all constituencies.

**RELIEF REQUESTED**

13.     By this Motion, the Debtors seek an order from this Court approving the emergency

loan received from insider Frank D. Cain ("Cain") as a secured post-petition loan and to approve

repayment of same as the funds become availabe upon final order of the Court.

14.     On Friday afternoon, January 29, 2010, Debtors' Bank  BB&T verbally advised

Mr. Cain that it had terminated and/or "frozen" all ACH transfers into the Debtors various BB&T

4

accounts from the Debtors TI and PI's bank accounts in Illinois and Virginia, as had been the normal practice for the Debtors.[1] Without the funds BB&T refused to transfer in to the BB&T payroll accounts, the Debtors were immediately concerned and faced with the possibility that payroll checks issued to their employees on Saturday, January 30, 2010 in the ordinary course of operations, would not clear. Upon information and belief, BB&T has maintained that it will continue to refuse to allow the Debtors to make any ACH transfers from Debtors' accounts in to Debtors' BB&T accounts without order of this Court.

15.    Because of BB&T's refusal, there would possibly be insufficient funds in the Debtors' payroll accounts to support the January 30, 2010 payroll as those checks began to be presented for payment. Consequently, the emergency postpetition loan from Mr. Cain was necessary to ensure that the Debtors' employees payroll checks cleared, to avoid an irreparable disruption to Debtors' operations and to avoid significant harm to Debtors' employees, many of whom live "paycheck to paycheck" and need immediate access to their payroll amounts. The Emergency Post Petition Loan was necessary on an emergency basis to provide sufficient funds to allow the Debtors to pay employee wages, and has already been funded on Monday, February 1, 2010, after the filing time had passed and prior to approval of this Motion.

16.    The emergency funding by Mr. Cain was necessary for the Debtors to maintain maximum value for the benefit of all creditors. The Debtors' ability to continue its operations required the availability of these funds. The absence of such funds would have caused irreparable harm and massive disruption to the Debtors, the estate, the creditors, and the prospects for a successful reorganization.

---

[1] For a more detailed explanation of the Debtors bank accounts and cash management system, please see the Debtors' Motion to Continue Use of Existing Cash Management System and Bank Accounts.

17.     While the Debtors currently have the funds necessary to support the current and future payrolls, until the Court enters an order authorizing and directing BB&T to resume the ordinary course ACH banking arrangements as DIP accounts, the Debtors cannot currently access their own funds in the banks located near the restaurants.

18.     The minimum funding necessary to avoid immediate and irreparable harm to the Debtors' estates was loaned on an emergency basis but could not await the hearing on this matter.

19.     As required by 11 U.S.C. §§ 364(a) and (b), the Debtors , due to the complete lack of time to deal with BB&T's actions on Friday afternoon after wire cutoff time when perhaps something could have been arranged,  had no options open but the one they took.

20.     The Debtors seek this Court's approval to repay the Emergency Post-Petition Loan , after notice and opportunity to object, and after entry of a Final Order.  Furthermore, as a necessary corollary, the Debtors seek *nunc pro tunc* Court approval for the emergency loan and Loan Documents reasonably requested by the Lender.

21.     The terms and conditions of the Emergency Post Petition Loan are fair, reasonable, the best available under the circumstances.  In effect, BB&T loaned funds to Mr. Cain on a secured basis on his assets, and Mr. Cain has loaned the funds to the Debtors, secured by his existing prepetition collateral.   Mr. Cain only seeks repayment in the exact amount necessary to repay BB&T and in effect, the entire transaction is a "wash" to Mr. Cain. While the Debtors believe that Mr. Cain's action were entirely the product of good-faith negotiations between the Debtors and Mr. Cain, the Debtors reserve all rights as to BB&T's actions taken on the eve of filing and outside the ordinary course of operations.   The Debtors believe that the DIP Lender is entitled to the protections and benefits of Bankruptcy Code §§ 364(c) and 364(e).

WHEREFORE, the Debtors respectfully request interim approval of the Emergency Post-

Petition  Loan, and for Final hearing to approve same on a final basis and for approval of the

repayment terms as set forth herein. No repayment will be made until after said Final Hearing.

Respectfully submitted,

WISE DELCOTTO PLLC


/s/ Allison F. Arbuckle, Esq.
Laura Day DelCotto, Esq.
Allison F. Arbuckle, Esq.
Christina E. Hayne, Esq.
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
aarbuckle@wisedel.com
ldelcotto@wisedel.com
chayne@wisedel.com
COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION


Z:\Clients\Treasure Isles\Pleadings\DIP Loan Emergency Motion 20100201.doc